UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| FIA CARD SERVICES, N.A. | ) | Case No.: 11-CV-04539-LHK |
| Appellant, | ) | |
| | ) | ORDER AFFIRMING BANKRUPTCY |
| v. | ) | COURT ORDER |
| | ) | |
| BRAD THURRY SMITH | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| | ) | |

Appellant FIA Card Services ("FIA") appeals the Bankruptcy Court's dismissal of FIA's second amended complaint, which sought to declare Appellee Brad Thurry Smith's ("Smith" or "debtor") credit card debt to be non-dischargeable pursuant to 11 U.S.C. § 523. The Bankruptcy Court had previously granted two motions to dismiss without prejudice, allowing FIA to amend its pleadings to plausibly state a claim for relief. After finding that FIA's second amended complaint ("SAC") did not plead sufficient facts to establish non-dischargeability, the Bankruptcy Court dismissed FIA's complaint with prejudice. FIA now appeals the Bankruptcy Court's order, which held that FIA (1) failed to sufficiently allege facts to establish that Smith incurred the credit card debt with the fraudulent intent of never repaying the charges, and (2) failed to sufficiently allege facts to establish that FIA justifiably relied on Smith's representations that he would repay that debt. For the reasons stated below, the Court AFFIRMS the Bankruptcy Court's Order dismissing FIA's second amended complaint.

1

Case No.: 11-CV-04539-LHK
ORDER AFFIRMING BANKRUPTCY COURT

## I. BACKGROUND

Brad Smith filed for Chapter 7 bankruptcy on October 19, 2010. On January 11, 2011, FIA Card Services, along with Chase Bank USA, initiated an adversary proceeding against the debtor, seeking a finding of non-dischargeability of debt under 11 U.S.C. § 523. Complaint ("Compl."), ECF No. 2 at 2-4. Chase Bank is not a party to this appeal. FIA's claims of non-dischargeability arise from $3,649.00 in retail credit card charges incurred by Smith from September 20, 2010 to October 6, 2010. SAC ¶ 7. The debt consists of a $2,854.19 purchase at Pottery Barn, and "almost 20" other charges. *Id*. ¶¶ 9, 14c. Other than the Pottery Barn charge, the other charges averaged less than $50 per charge.[1] All other facts necessary for the analysis are discussed below.

FIA's initial complaint contained few other factual allegations beyond describing the charges themselves, and did not specify the cause of action being brought. On February 16, 2011, Smith filed a motion to dismiss, which was granted by the Bankruptcy Court without prejudice on March 16, 2011. *See* R. at Doc. 10. FIA then filed a first amended complaint on March 29, 2011. *See* R. at Doc. 11. The first amended complaint clarified that FIA was asserting claims under 11 U.S.C. § 523(a)(2), which precludes the dischargeability of debts obtained from the creditor through false pretenses, a false representation, or actual fraud. The amended complaint also added factual allegations regarding Smith's financial position, other debts, and monthly expenses. Smith filed another motion to dismiss on April 8, 2011, which was again granted by the Bankruptcy Court without prejudice on May 25, 2011. *See* R. at Doc. 19.

FIA filed the SAC on June 3, 2011, in which it continued to assert a claim under 11 U.S.C. § 523. The SAC added allegations detailing the nature and amount of the charges at issue. *See* R. at Doc. 20. Smith filed a motion to dismiss the SAC on July 3, 2011. The Bankruptcy Court found that FIA did not plausibly plead Smith's fraudulent intent or FIA's justifiable reliance on Smith's

---

[1] All but one of the other charges were for amounts less than $100, and were made at restaurants, gas stations, or retail stores. *See* R. at Doc. 17-5. This information was taken from Smith's credit card statement, which was included in the record on appeal. FIA incorporated the statement into the Complaint by referencing the charges made in the Complaint, and including the statement in the record on appeal. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) (explaining that courts' rulings on 12(b)(6) motions to dismiss may take into consideration "documents incorporated into the complaint by reference").

2
Case No.: 11-CV-04539-LHK
ORDER AFFIRMING BANKRUPTCY COURT

representations, and thus granted the motion to dismiss, with prejudice, on August 26, 2011. *See* R. at Doc. 26.

FIA filed a notice of appeal in this Court of the Bankruptcy Court's Order of dismissal on September 13, 2011. *See* ECF No. 1. FIA filed its opening brief on October 18, 2011. *See* ECF No. 7. Smith filed his responsive brief on November 16, 2011. *See* ECF No. 9. FIA filed a reply on November 21, 2011. *See* ECF No. 10.

## II. LEGAL STANDARDS

On appeal, a district court reviews a Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. *See In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990). Thus, the proper standard for this Court's review of the Bankruptcy Court's dismissal of plaintiff's complaint for failure to state a claim is *de novo*. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011).

Federal Rule of Bankruptcy Procedure 7012(b) applies Federal Rules of Civil Procedure 12(b) through 12(i) to adversary proceedings in Bankruptcy Court. *In re Zimmer*, 313 F.3d 1220, 1222 (9th Cir. 2002). In reviewing a motion to dismiss, a court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint alleges facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Starr v. Baca, 652 F.3d 1202, 1214 (9th Cir. 2011) ("[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

3

Case No.: 11-CV-04539-LHK
ORDER AFFIRMING BANKRUPTCY COURT

1     In addition, Federal Rule of Bankruptcy Procedure 7009 applies Federal Rule of Civil Procedure 9 to adversary proceedings in Bankruptcy Court. Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Complaints alleging fraud or mistake must comply not only with *Iqbal's* plausibility pleading standard but also with Federal Rule of Civil Procedure 9(b). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

**III. DISCUSSION**

Under § 523(a)(2)(A) of the Bankruptcy Code, a debt for goods or services obtained by the debtor under "false pretenses, a false representation, or actual fraud" is non-dischargeable. 11 U.S.C. § 523(a)(2)(A). "The purposes of th[is] provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors." *In re Slyman*, 234 F.3d 1081, 1987 (9th Cir. 2000) (citing 4 Collier on Bankruptcy ¶ 523.08[1][a] (15th ed. rev. 2000)).

In interpreting "actual fraud" in section 523(a)(2)(A) of the Bankruptcy Code, courts have looked "to the [common law] concept of actual fraud" as it was understood in 1978 when that language was added to section 523(a)(2)(A). *In re Ettell*, 188 F.3d 1141, 1144 (9th Cir. 1999). Thus, the Ninth Circuit has consistently held that a creditor must demonstrate five elements to prevail on any claim arising under § 523(a)(2)(A). *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). The five elements are: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996).

In the context of non-dischargeability of credit card debt, the Ninth Circuit has determined that a credit card debtor makes representations to his or her creditor simply by using his or her credit card. *Hashemi*, 104 F.3d at 1126 ("Each time a 'card holder uses his credit card, he makes a

4

Case No.: 11-CV-04539-LHK
ORDER AFFIRMING BANKRUPTCY COURT

representation that he intends to repay the debt . . . . When the card holder uses the card without an intent to repay, he has made a fraudulent representation to the card issuer.'") (citation omitted). The remaining elements, in the context of credit card debt, are typically resolved by answering three inquiries: "(1) did the card holder fraudulently fail to disclose his intent not to repay the credit card debt, (2) did the card issuer justifiably rely on a representation by the debtor and (3) was the debt sought to be discharged proximately caused by the first two elements." *In re Anastas*, 94 F.3d 1280, 1284 (9th Cir. 1996) (citing *Eashai*, 87 F.3d 1088).

The issue in this appeal is whether Smith made the credit card purchases with the intent and purpose of deceiving FIA. "Establishing fraudulent intent can prove quite difficult in credit card cases, because it normally involves transactions between the debtor and third parties; the debtor rarely makes a representation directly to the credit card creditor." *Ettell*, 188 F.3d at 1144. "[A] court may infer the existence of the debtor's intent not to pay if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *Hashemi*, 104 F.3d at 1125. To identify intent from a pattern, courts look to "the totality of the circumstances." *See Hashemi*, 104 F.3d at 1125-26; *Eashai*, 87 F.3d at 1087. In assessing "the totality of the circumstances," the Ninth Circuit has identified twelve, non-exclusive factors derived from *Citibank v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (9th Cir. 1996). *See Eashai*, 87 F.3d at 1087-88.

The *Dougherty* factors include: (1) the length of time between the charges and the bankruptcy filing; (2) whether or not an attorney had been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases made were luxuries or necessities. *See Hashemi*, 104 F.3d at 1126 n.2. These factors "are nonexclusive; none is dispositive, nor must a debtor's conduct satisfy a minimum number in order to prove fraudulent intent." *Id.* at 1125 (citation omitted). They may be used primarily as a framework for a more

5

Case No.: 11-CV-04539-LHK
ORDER AFFIRMING BANKRUPTCY COURT

context-specific analysis of the presence or lack of intent. *See id.* ("So long as, on balance, the evidence supports a finding of fraudulent intent, the creditor has satisfied this element."); *see also In re Manning*, 280 B.R. 171, 186 (Bankr. S.D. Ohio 2002) ("While the *Dougherty* factors may be helpful in determining the debtor's state of mind, their application should not necessarily be outcome determinative."). Further, the determinative question is not "whether the debtor was hopelessly insolvent at the time he made the credit card charges." Rather, the question is "whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt." *Anastas*, 94 F.3d at 1285-86.

FIA argues that it has alleged sufficient facts from which fraudulent intent can plausibly be inferred. Specifically, FIA argues that Smith incurred his debt within 29 days before filing for bankruptcy, contacted a bankruptcy attorney six days after his final credit card charge, and owed $18,518.43 on his card at the time of filing. SAC ¶¶ 8, 13, 18b. FIA also alleges that Smith owed in excess of $99,000 in unsecured debt, that his monthly expenses exceeded his monthly income by over $7,000, and that, as a Vice President of Yahoo, he was financially sophisticated. SAC ¶¶ 18e-18g.

Viewing the totality of circumstances, however, the facts as alleged do not plausibly suggest that Smith "maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt." *Anastas*, 94 F.3d at 1285-86. For example, Smith only contacted a bankruptcy attorney *after* the final charges were made and the amount of Smith's disputed charges ($3,649) was approximately only a quarter of Smith's monthly income. SAC ¶ 14b, d, e. Moreover, although Smith made multiple charges in a single day, all of the charges, except for the Pottery Barn charge, averaged less than $50. A number of charges in small amounts over a 17 day period leading up to the bankruptcy filing does not necessarily suggest an intent to defraud, but rather may be indicative of normal purchasing necessary to maintain a household.

Additionally, the SAC is silent as to many other *Dougherty* factors that otherwise might suggest intent to defraud. For example, the SAC is silent as to whether the charges were above

Smith's credit limit, whether Smith was employed or what his prospects of employment were, or whether there was a sudden change in Smith's buying habits.

The remaining facts alleged in the complaint establish one of the *Dougherty* factors that might lead to an inference of intent to defraud: Smith was in poor financial condition at the time the charges were made. However, the Ninth Circuit has made clear that poor financial condition alone does not imply a fraudulent intent to never repay a creditor. For example, in *Anastas*, the debtor incurred charges on a number of credit cards to make cash advances at Lake Tahoe casinos. *Anastas*, 94 F.3d at 1283. The Bankruptcy Court found an intent to defraud, explaining that "since his living expenses exceeded his income, [the debtor] could not have had any realistic hope of repaying his credit card debt." *Id.* The Ninth Circuit disagreed, and overturned the Bankruptcy Court's finding because it "improperly focused almost exclusively on [the debtor's] financial condition." *Anastas*, 94 F.3d at 1286. The Ninth Circuit explained that "the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges, but rather "the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt." *Id*. at 1285-86.

The factual allegations in the SAC suggest that Smith may have been unable to repay the debt, not that he necessarily incurred the debt with the intention of petitioning for bankruptcy and avoiding repaying the charges on his credit card. The debt at issue primarily consists of a single charge at a furniture and housewares store,[2] and several small charges which were mostly made at restaurants, gas stations, or retail stores. Indeed, the picture that arises from FIA's complaint is simply of a debtor who continued to incur charges while in debt, and now finds himself unable to repay those charges. FIA has failed to plausibly allege facts sufficient to infer, based on a totality

---

[2] Additionally, FIA argued below that the charge to Pottery Barn was for luxury goods and is entitled to a presumption of non-dischargeability under section 523(a)(2)(C). 11 U.S.C. § 523(a)(2)(C) establishes that "consumer debts owed to a single creditor and aggregating more than $600 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable." The Bankruptcy Court did not err in refusing to take judicial notice "that a Pottery Barn charge must, by definition, be a luxury item" under section 523(a)(2)(C), or in ruling that "FIA, which presumably knows what Smith purchased at Pottery Barn, must allege what he purchased if it seeks to benefit from the presumption of non-dischargability." Order Granting Motion to Dismiss at 5.

7
Case No.: 11-CV-04539-LHK
ORDER AFFIRMING BANKRUPTCY COURT

1  of the circumstances, that Smith intended to defraud FIA by charging $3,649 over a period of
2  seventeen days.
3     FIA's failure to plausibly allege Smith's fraudulent intent is a sufficient ground to dismiss
4  FIA's second amended complaint.  Thus, the Court affirms the Bankruptcy Court's Order of
5  dismissal, and does not reach the question of whether FIA failed to assert its justifiable reliance on
6  Smith's representations.  As this is FIA's second amended complaint, leave to amend is futile, and
7  the Court finds no error in the Bankruptcy Court's decision to grant the motion to dismiss with
8  prejudice.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003)
9  (quoting *Foman v. Davis*, 371 U.S. 178, 182  (1962)) (courts may consider "repeated failure to cure
10 deficiencies by amendments previously allowed" and "futility of amendment" in determining
11 whether leave to amend should be granted); *see also Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th
12 Cir. 2011) (leave to amend need not be granted where doing so would be an exercise in futility).

### IV.  CONCLUSION

The Court AFFIRMS the Bankruptcy Court's dismissal of FIA's second amended complaint with prejudice, based on FIA's failure to sufficiently allege debtor's intent and purpose to deceive FIA.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 22, 2012

_____
LUCY H. KOH
United States District Judge

8

Case No.: 11-CV-04539-LHK
ORDER AFFIRMING BANKRUPTCY COURT